1

2

3

4

5

6

7             **UNITED STATES DISTRICT COURT**

8         **SOUTHERN DISTRICT OF CALIFORNIA**

9

10   CHARLIE T. DANG,                   CASE NO. 07cv520 BTM (POR)

11                  Plaintiff,     **ORDER:**
                                           **(1)GRANTING IN PART AND**

12                                         **DENYING IN PART DEFENDANT'S**
                                        **MOTION TO DISMISS [Doc. No. 10];**

13

14                                         **(2) DENYING DEFENDANT'S**
                                        **MOTION FOR A MORE DEFINITE**
                                        **STATEMENT [Doc. No. 10];**

15

16                                         **(3) DENYING PLAINTIFF'S MOTION**
                                        **TO QUASH FURTHER MOTIONS**
                                        **[Doc. No. 16];**

17

18                                         **(4) DENYING PLAINTIFF'S MOTION**
                                        **TO DISBAR WILLIAM WHELAN**
                                        **[Doc. No. 16];**

19

20                                         **(5) DENYING PLAINTIFF'S MOTION**
                                        **TO QUALIFY WILLIAM WHELAN**
                                        **AS CO-DEFENDANT [Doc. No. 16];**

21                                         **AND**

22     vs.                             **(6) DENYING PLAINTIFF'S**
                                        **AMENDED MOTION FOR**

23                                         **SANCTIONS [Doc. No. 19].**

24

25

26

27   SOLAR TURBINES, INC., a Caterpillar
    Company,

28                          Defendant.

1    On March 22, 2007, Plaintiff Charlie T. Dang, proceeding pro se, filed an employment
2    discrimination complaint against his employer, Defendant Solar Turbines, Inc.  On April 19,
3    2007, Defendant filed a motion to dismiss, or in the alternative, a motion for a more definite
4    statement.  On July 3, 2007, the Court granted a motion for a more definite statement and
5    ordered the Plaintiff to amend his complaint.

6    Plaintiff filed his First Amended Complaint (FAC) on July 24, 2007 setting forth the
7    following ten causes of action in the caption: (1) Disability Discrimination; (2) Malicious
8    Practices of Employment; (3) Intentional Employment Discrimination; (4) Intentional Infliction
9    of Physical and Emotional Distress; (5) Sexual Harassment; (6) Retaliation in Employment;
10   (7) Racial Discrimination; (8) Age Discrimination in Employment; (9) Failure to Reasonable
11   Accommodations [sic]; (10) Front Pay Discrimination in Employment.   In the body of the
12   FAC, Plaintiff further stated that he alleges causes of action "under and pursuant to" the
13   Family Medical Leave Act; the Americans with Disabilities Act; Title VII of the Civil Rights Act;
14   Age Discrimination in Employment Act; California Fair Employment and Housing Act; and the
15   California Family Rights Act.

16   On August 10, 2007, Defendant filed a motion to dismiss Plaintiff's FAC, or in the
17   alternative, a motion for a more definite statement.  On October 10, 2007, Plaintiff filed (1)
18   a  motion to quash Defendant's further motions to dismiss Plaintiff's complaint; (2) a motion
19   to disbar attorney William V. Whelan; and (3) a motion to qualify Mr. Whelan as a co-
20   defendant.  On October 29, 2007, Plaintiff filed what he called "Amended Motions for
21   Sanctions" requesting that the court award sanctions in addition to the above requested
22   relief.

23   For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN
24   PART Defendant's motion to dismiss and DENIES Defendant's motion for a more definite
25   statement.  The Court DENIES Plaintiff's motions to quash further motions, to disbar Mr.
26   Whelan, and qualify Mr. Whelan as a co-defendant.  The Court further DENIES Plaintiff's
27   amended motion for sanctions.

28   **BACKGROUND**

07cv520

1    The following facts are taken from Plaintiff's FAC.  The Court makes no finding as to

2    the truth of these facts.

3    Plaintiff began working for Defendant Solar Turbines on July 1, 1991.  (FAC, p.2)

4    Plaintiff performed well and received merit increases every year until 2000.  (Id.)  Starting in

5    early 2000, Plaintiff began suffering from "permanent left leg coldness" and resulting

6    numbness in the leg and severe hemorrhoids. (FAC 1)  As a result of this condition, Plaintiff

7    was "prevented from standing or walking for 10-15 minutes at a time." (Id.)

8    Around the same time, Plaintiff's Manager Sharlene Mullen began "scapegoating"

9    Plaintiff as  a poor performer, despite his good performance. (Id.)  Mullen did so in order to

10   prove to her superiors that she "was serious about dealing with poor performance in her

11   department." (FAC 2, Ex. D)  Mullen targeted Plaintiff by forcing Plaintiff to work on the shop

12   floor and to participate in a training class which he did not need and asking his co-workers

13   to "write up against" him.  (Id.)  Mullen chose Dang to scapegoat because he was "known as

14   a submissive guy." (Id.)  Plaintiff alleges that Mullen's treatment of him constitutes sexual

15   harassment and a hostile working environment.  (FAC 1)

16   On September 18, 2003, Scott Jaykell, Human Resources, met with Plaintiff to discuss

17   Plaintiff's alleged poor performance. (FAC 4)  During this discussion, Jaykell discovered that

18   Plaintiff was suffering from depression and  placed Dang on a disability leave under FMLA

19   beginning on September 19, 2003. (FAC 4, 5) Around this time,  Dr. Rosben Gutierrez,

20   Plaintiff's psychiatrist,  diagnosed him with severe depression. (FAC 7)

21   On October 20, 2003, Plaintiff wrote a letter to Scott Jaykell complaining about the

22   unfair treatment he received from Mullen. (Ex. D)

23   On October 28, 2003, Dr. Gutierrez cleared Plaintiff to return to work starting

24   November 19, 2003 and recommended a transfer to a different department. (FAC 9, Ex. G)

25   On November 12, 2003, Dr. Eric Stueland also wrote to Defendant recommending that

26   Plaintiff be transferred to a different department. (FAC 10)  On November 11, 2003, Solar

27   informed Plaintiff that Solar had reviewed the current job openings and there was no position

28   available in a different department with similar job duties. (Ex. F)  On November 19, 2003,

1   because Plaintiff had not been allowed to return to work, Dr. Gutierrez extended Plaintiff's

2   disability leave to January 14, 2004. (FAC 11)

3   　　　On November 20, 2003, Defendant sent Plaintiff a letter requesting that Plaintiff see

4   Dr. Davis Suskind on December 1, 2003 for a fitness-for-duty clearance. (FAC 13, Ex. L)  Dr.

5   Suskind found Plaintiff unfit to return to work. (FAC 13)  On January 2, 2004, Plaintiff was

6   again examined by another physician, Dr. Charles Ettari, at the request of Defendant.  (FAC

7   14)  Plaintiff alleges that Defendant used these medical opinions to refuse to allow Plaintiff

8   to return to work for malicious and discriminatory reasons. (FAC 14,15)

9   　　　On or around January 12, 2004, Plaintiff was placed on long-term disability status by

10  Defendant. (FAC 16)  On February 24, 2004, Dr. Gutierrez again released Dang to return to

11  work and recommended transfer to a different department.  (FAC 17)  On March 19, 2004,

12  Defendant wrote to Dr. Gutierrez requesting that Dr. Gutierrez reevaluate Plaintiff's ability to

13  return to work given that he would return to a Performance Improvement Plan.  (Ex. F-F)

14  Defendant apparently continued Defendant's long term disability status.  On December 15,

15  2004, Dr. Gutierrez continued Plaintiff's disability status to March 1, 2005, finding him

16  temporarily totally disabled.  (Ex. M)

17  　　　On March 9, 2006, Dr. Gutierrez found Plaintiff no longer disabled and recommended

18  that he be returned to work for a fitness-for-duty evaluation.  (FAC 20, Ex. K)  On  March 27,

19  2006, Defendant also cleared Plaintiff for a return to work with some limitations, i.e.,

20  sedentary work only and unable to return to his previous job. (FAC 20, Ex. Y)  Instead of

21  immediately reinstating Plaintiff,  Defendant invited Plaintiff to return to Solar on April 14,

22  2006  to apply for open positions. (FAC 23)   Plaintiff picked one of the open positions.

23  Plaintiff was informed two weeks later by Scott Jaykelll that he was not  qualified for the

24  chosen position. (Id.) On May 11,  2006, Plaintiff returned to Solar again to examine the list

25  of openings.  At this time, Jaykell offered Plaintiff a severance package in exchange for

26  resignation and also threatened to terminate him if he did not resign.  (FAC 24)  On May 24,

27  2006, Jaykell informed Plaintiff that he was not qualified for the position that he had picked

28  on May 11, 2006.

07cv520

1    Plaintiff alleges that Solar's repeated failure to accommodate him by reinstating him

2    to a similar position in a different department constitutes discrimination and retaliation for

3    taking a medical leave of absence.  (FAC 22)  Plaintiff further alleges that Defendant's

4    actions are attributable to "racial discrimination against Dang because he is not an Anglo-

5    American" and also "age discrimination . . . because he is over 40."  (FAC 31, 39)

6                                             **DISCUSSION**

7    A motion to dismiss for failure to state a claim will be denied unless it appears that "no

8    relief could be granted under any set of facts that could be proved consistent with the

9    allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Fidelity Financial Corp. v.

10   Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1435 (9th Cir. 1986)  "The court

11   may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2)

12   insufficient facts under a cognizable legal claim."  Smilecare Dental Group v. Delta Dental

13   Plan of California, Inc., 88 F.3d 780, 783 (9th Cir1996) quoting  Robertson v. Dean Winter

14   Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.1984).  Although the Court is generally confined

15   to consideration of the pleadings only, attached documents are deemed part of the complaint

16   and may be considered in deciding a motion to dismiss.  Durning v. First Boston Corp., 815

17   F.2d 1265, 1267 (9th Cir. 1987).

18

19   1.    FMLA/CFRA Claims

20   Plaintiff's FAC alleges violations of  the Family Medical Leave Act, 29 U.S.C. 2601 *et.*

21   *seq.* (FMLA) and the California Family Rights Act, California Government Code Sections

22   12945.2 (CFRA).  FMLA and CFRA  permit eligible employees to take up to  twelve weeks

23   of leave during any twelve-month period in the event of a serious health condition.  Upon

24   return from a FMLA/CFRA leave, an employee is entitled either to be reinstated  to his or her

25   former position or placed in an equivalent position in terms of benefits, pay and other

26   conditions of employment. 29 U.S.C.A. § 2614(a)(1); Cal. Gov't Code Section 12945.2(a).

27   FMLA/CFRA further prohibits an employer from interfering with an employee's exercise of

28   his or her rights under these provisions and retaliating based on an exercise of these rights.

5

29 U.S.C.A. § 2615(a); Cal. Gov't Code 12945.2(l).

Defendant argues that the Court should dismiss Plaintiff's FMLA and CFRA claims because Plaintiff is only guaranteed reinstatement during the twelve-week period allotted by FMLA/CFRA and Plaintiff did not return to work until a much later date.  Plaintiff however appears to be challenging more than just the failure to reinstate; he also alleges that Defendant's failure to reinstate him in March of 2006 was in retaliation for taking an earlier FMLA/CFRA leave of absence. (FAC 22) Therefore, contrary to Defendant's contention, it is not apparent from Plaintiff's current pleadings that Plaintiff can plead no facts which would entitle him to relief under FMLA/CFRA. If Plaintiff can establish evidence of a causal connection between his earlier FMLA/CFRA leave and Defendant's subsequent refusal to reinstate him after his long-term leave, Plaintiff may be entitled to relief for retaliation under these statutes. See 29 U.S.C.A. § 2615(a)(2); Govt. Code 12940(h); 12945.2(l) (prohibiting employer retaliation for exercise of leave rights).  The Court therefore denies Defendant's motion to dismiss Plaintiff's FMLA/CFRA claims.

Although Plaintiff's FAC is not a model of clarity, the Court takes in to account the fact that Plaintiff is proceeding pro se.  The Court finds that Plaintiff has met the requisite minimum threshold of giving the Defendant fair notice of Plaintiff's FMLA/CFRA claims and the factual basis for these claims.  <u>Yamaguchi v. United States Department of the Airborne</u>, 109 F.3d 1475, 1481 (1997). The Court therefore denies Defendant's motion for a more definite statement with regard to the CFRA/FMLA claims.

2.    <u>Disability Discrimination Claims</u>

Plaintiff also alleges that Defendant discriminated against him based on his disability and failed to provide him with reasonable accommodations pursuant to the Americans With Disabilities Act, 42 U.S.C. sections 12101 et. seq. (ADA) and the California Fair Employment and Housing Act, California Government Code section 12940 (FEHA).  Plaintiff's disability claims appear to boil down to the contention that Defendant repeatedly refused  to reinstate Plaintiff after his leave and allow him to transfer to a different but similar job upon his return.

07cv520

1   The ADA prohibits an employer from discriminating "against a qualified individual with

2   a disability because of the disability." 42 U.S.C. Section 12112(a).  A qualified individual is a

3   person who is able to perform the essential functions of the job with or without reasonable

4   accommodation.  42 U.S.C. Section 12111(8); Kennedy v. Applause, 90 F.3d 1477, 1481 (9th

5   Cir. 1996).  FEHA also contains similar provisions prohibiting discrimination against disabled

6   individuals who are able to perform the "essential duties" of the job. Cal.  Govt. Code Section

7   12940(a).

8   Defendant contends that Plaintiff's disability claims should be dismissed because

9   Plaintiff admits in his FAC that he was "temporarily totally disabled" during his leave.

10   Defendant argues that because Plaintiff was unable to perform the essential functions of his

11   job, Plaintiff was therefore not a "qualified individual" and ineligible for protection under the

12   ADA and FEHA.   The Ninth Circuit considered and rejected a similar argument in Nunez v.

13   Wal-Mart, 164 F.3d 1243, 1247 (9th Cir. 1999) as follows :

14          Unpaid medical leave may be a reasonable accommodation under the ADA. . .. Even
       an extended medical leave, or an extension of an existing leave period, may be a
15       reasonable accommodation if it does not pose an undue hardship on the employer .
       . .." If [Plaintiff's] medical leave was a reasonable accommodation, then [his] inability
16       to work during the leave period would not automatically render [him] unqualified. . . .
       Determining whether a proposed accommodation (medical leave in this case) is
17       reasonable, including whether it imposes an undue hardship on the employer, requires
       a fact-specific, individualized inquiry." (citations omitted)

18

19   The Court likewise rejects Defendant's argument.  As the Ninth Circuit held, Plaintiff's inability

20   to work during the leave period does not exclude him from relief under the ADA and FHA  as

21   long as Plaintiff can establish that his leave was a reasonable accommodation.  Whether

22   reinstatement and transfer to a different position after the long term leave enjoyed by Plaintiff

23   constitutes a reasonable accommodation will be a factual question.  At this point, Plaintiff has

24   pled that he was cleared to return to work from his long term leave on March 27, 2006 with

25   certain restrictions and that Defendant failed to reinstate him in a position that would

26   accommodate those restrictions in contravention of the ADA and FEHA. (FAC 20-22) Plaintiff

27   has also pled that his reinstatement and transfer to a different department would not have

28   been an undue hardship on Defendant. (FAC 21)  The Court finds that these allegations in

1   addition to Plaintiff's factual allegations regarding his medical  history and leave are sufficient
2   to state a claim for relief. Plaintiff's pleadings with regard to his disability claims are also
3   sufficient to provide Defendant with notice regarding the factual basis for Plaintiff's claims.[1]
4   The Court therefore denies Defendant's motion to dismiss and motion for a more definite
5   statement with regard to Plaintiff's disability claims.

6

7   3.      Race Discrimination and Age Discrimination Claims

8          Plaintiff's FAC also alleges race and age discrimination claims pursuant to Title VII of
9   the Civil Rights Act of 1964, 42 U.S.C. sections 2000-e, et. seq. (Title VII), the Age
10  Discrimination and Employment Act, 29 U.S.C. sections 621 et. seq. (ADEA)  and FEHA.

11         Although a plaintiff need not plead facts to support a prima facie case of discrimination,
12  he or she does need to provide a short and plain statement of the claim showing that the
13  pleader is entitled to relief pursuant to Fed. Rule Civ. Proc. 8(a)(2).  Swierkiewicz v. Sorema,
14  N.A., 534 U.S. 506, 514 (2002).  The Supreme Court has held that this standard is met in a
15  race and age discrimination case where a plaintiff "detailed the events leading to his
16  termination, provided relevant dates, and provided the ages and nationalities of at least some
17  of the relevant persons involved with his termination." Id.

18         Here, Plaintiff alleges in conclusory fashion  that Defendant extended his leave and
19  refused to reinstate him  "because he is not an Anglo-American" and "because he is over 40
20  years old." (FAC 31, 39)  Plaintiff's FAC describes the events surrounding his medical leave
21  of absence and Solar's subsequent refusal to reinstate him.  But aside from alleging his
22  status as a minority over the age of 40, Plaintiff has not plead any other facts supporting his
23  characterization of Defendant's actions as age and/or race discrimination. The Court  finds

24  _____

25         [1]      The Court further rejects Defendant's argument that the employer did in fact
       provide a reasonable accommodation by providing Plaintiff with a leave of absence even
26     though  the employer did not allow Plaintiff to return to work.  An accommodation by
       definition is a change or adjustment which allows disabled individuals to perform their job.
27     A leave of absence does not allow disabled persons to perform their job if they are not
       allowed to return to work from their leave of absence.  In the present circumstances, a leave
28     of absence without a corresponding right to return to work is not an accommodation but
       rather a delayed termination.

07cv520

1    that Plaintiff's claims of age and race discrimination are wholly unsupported by factual

2    allegations and do not meet the minimum  requirements set forth in Swierkiewicz. 534 U.S.

3    at 514.  The Court therefore grants Defendant's motion to dismiss with regard to these claims.

4       Plaintiff has leave to amend his complaint.  If he chooses to pursue these causes of

5    action for age and race discrimination, Plaintiff should include factual allegations  that show

6    that he was treated badly because of  his race or age, such as, but not limited to, details

7    regarding Plaintiff's own age and race/national origin and  the ages and race/ national origins

8    of his supervisors and any relevant co-workers or employees who replaced Plaintiff in his

9    position.

10    4.      Sexual Harrassment Claims

11       Plaintiff alleges that his supervisor Mullen sexually harassed him by targeting him as

12    a poor performer, making him work on the shop floor, forcing him to attend training which he

13    did not need, and giving him false performance reviews. (FAC 1, 8)

14       Sexual harassment claims usually take the form of either (1) quid pro quo claims

15    where an employer conditions a benefit of employment upon acquiescence to sexual

16    advances; or (2) hostile work environment claims where an employer subjects the employee

17    to unwelcome conduct amounting to hostile  working conditions.  Meritor Savings Bank v.

18    Vinson, 477 U.S. 57, 65-69 (1986); Fisher v. San Pedro Peninsula Hospital, 214 Cal. App.

19    3d 590, 609-611 (1989).  Regardless of the theory Plaintiff proceeds under, the crux of a

20    sexual harassment claim is "whether members of one sex are exposed to disadvantageous

21    terms and conditions of employment to which members of the other sex are not exposed."

22    Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998); see EEOC v. National

23    Ed. Ass'n, Alaska, 422 F.3d 840, 842 (9th Cir. 2005)(a court must look to the "differences

24    in the harassment suffered by female and male employees.").

25       Plaintiff fails to state a claim for sexual harassment because he  alleges no facts in

26    support of a claim that Mullen's mistreatment was motivated by his gender or that he was

27    subject to working conditions less favorable to his gender. Plaintiff neither alleges that Mullen

28    sought sexual favors from him, harassed him because he refused sexual advances from

07cv520

Mullen, nor that Mullen mistreated him based on his gender or other gender-related qualities. To the contrary, Plaintiff himself alleges that Mullen targeted Plaintiff to prove to her superiors that she was proactive about poor performers in her department and that she chose to target Plaintiff because he was known as a submissive guy.  (FAC 3, 4, Ex. D)  Because Plaintiff's allegations do not support, and in fact are inconsistent with, a claim that Plaintiff was harassed *because* of his gender, the Court grants Defendant's motion to dismiss the sexual harassment claim.  If Plaintiff continues to  believe that he was subject to mistreatment by Mullen based on his sex, he may amend his complaint to include such allegations and any supporting facts.

5.     Plaintiff's Motion To Quash Further Motions

Plaintiff moves to quash further motions to dismiss on the grounds that Defendant's motions to dismiss  (1) contain "twisted facts and falsities"; and (2) are brought in bad faith for the purpose of delaying this action and draining Plaintiff's finances.

The  Court has reviewed Defendant's motions filed to date and concludes that they were properly brought in exercise of Defendant's rights under Rule 12 of the Federal Rules of Civil Procedure.  In response to Defendant's first motion to dismiss, the Court made no finding as to the viability of the claims in Plaintiff's original complaint but rather ordered Plaintiff to provide a more definite statement of his claims.  After Plaintiff filed his FAC, Defendant brought another motion to dismiss challenging the sufficiency of Plaintiff's pleadings in the FAC.  The Court notes that bringing more than one motion to dismiss is not unusual and finds no evidence of bad faith or dilatory tactics in Defendant's actions detailed above.  The Court also finds that Defendant's arguments, even though the Court disagreed with some of them, were not frivolous or malicious but rather an exercise of zealous advocacy on behalf of the client.  Moreover, the Court notes that Defendant's motions to dismiss were appropriately limited to argument based on the content of Plaintiff's own pleadings and attached exhibits.  In moving to dismiss, Defendant made no inappropriate attempt to introduce extraneous information outside the pleadings to sway the court.  The

07cv520

1   Court therefore denies Plaintiff's motion to quash further motions to dismiss.

2

3   6.      Plaintiff's Motion To Disbar Defense Counsel and "Qualify" Him As a Co-Defendant

4           Plaintiff further requests that the Court disbar Defendant's attorney, William Whelan

5   (defense counsel) and  add him as an individual defendant to the lawsuit.  Plaintiff bases his

6   request on the grounds that defense counsel acted as follows: (1) introduced twisted facts

7   and falsities in Defendant's Motions to Dismiss; (2) disparaged Plaintiff's race, national origin

8   or medical conditions; (3) knowingly harassed Plaintiff and plotted to drain his resources; (4)

9   served motions and pleadings on Plaintiff that limit his ability to respond; and (5) engaged

10  in excessive and abusive discovery and delay tactics.  Plaintiff cites as one example the fact

11  that defense counsel subpoenaed documents and allegedly colluded with Aptara, the

12  company responsible for copying the documents, to charge Plaintiff $42.22 per page for

13  photocopying.

14          The Court has reviewed all the briefing filed by Defendant to date and also the

15  attached letter and subpoenas issued by defense counsel and finds no evidence of

16  misleading or false facts, disparaging comments , harassing or dilatory tactics or  abusive

17  discovery.  The Court sympathizes with Plaintiff's frustration and understands that as a pro

18  se litigant, Plaintiff may often feel confused, overwhelmed and/or financially drained.  On the

19  present record before the Court, however,  it appears that Plaintiff's frustration and limited

20  ability to respond is the result of the inherent difficulty in prosecuting an action without the aid

21  of an attorney as opposed to the result of any inappropriate and harassing behavior on the

22  part of defense counsel.  The Court therefore finds that there are no grounds to disbar

23  defense counsel[2] or to add him as a individual defendant to the suit.

24          The Court speculates that Plaintiff's allegation regarding the excessive cost of

25  photocopying the subpoenaed documents is the result of a miscommunication between

26  _____

27      [2]  The Court agrees with Defendant that it is questionable whether the Court has the
28  authority to disbar defense counsel.  Even assuming that it has the authority, the Court finds
    that it would not do so because there is no evidence of unethical or inappropriate conduct
    on the part of defense counsel.

1  Plaintiff and Aptara.  The Court requests that the defense counsel  write Plaintiff a brief letter

2  explaining the copying costs of the subpoenaed documents.

3  **CONCLUSION**

4  For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART

5  Defendant's motion to dismiss. [Doc. No. 10]   Plaintiff's causes of action for race

6  discrimination, age discrimination and sexual harassment are dismissed with leave to amend.

7  The Court DENIES Defendant's motion for a more definite statement with regard to the

8  remaining claims. [Doc. No. 10]  The Court  DENIES Plaintiff's motions to quash further

9  motions, disbar defense counsel and add him as an additional defendant. [Doc. No. 16]

10  Because the Court finds no sanctionable conduct, the Court further DENIES Plaintiff's

11  amended motion for sanctions. [Doc. No. 19]

12  Plaintiff is advised that any amended complaint must attach proof of exhaustion of

13  Plaintiff's administrative remedies. Although the Court is aware that Plaintiff  attached his

14  EEOC right to sue letter to his original complaint, each pleading must be complete in itself

15  without reference to the superseded pleading. See Civil Local Rule 15.1.  Plaintiff  is further

16  advised to separately plead his claims pursuant to Federal Rule of Civil Procedure 10(b) to

17  facilitate the clear presentation of his allegations, i.e., Plaintiff should have separate sections

18  for each of his claims and, under each section, list all the facts supporting that claim.  Any

19  second amended complaint must be filed and served on or before January 25, 2008.

20  Defendant's time to answer is extended to February 8, 2008.

21  **IT IS SO ORDERED.**

22

23  **DATED:  December 18, 2007**

24

25  **Honorable Barry Ted Moskowitz**
    **United States District Judge**

26

27

28

12

07cv520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07cv520